I'm glad we were able to accommodate everyone's schedule and that you accommodated ours by being here today. Judge Smith are you there? I am here. Okay then we're all here today and suppose Mr. Gardner you proceed. As you know gentlemen Judge Smith is on the phone on this case so he'll be heard but not seen. Okay. It would probably be better the other way around. All right suppose we proceed. May it please the court good morning your honors I am Steve Gardner appearing on behalf of the appellants who are all we claim retirees of Transworld Airlines. I have asked to reserve two minutes for rebuttal and I would like to thank the court for accommodating my schedule by resetting it. The you know the fundamental question is whether the district court erred by granting summary judgment. Our position is of course that there were truly disputed facts at issue. We're not saying saying that we had a laydown case but we are saying that there are disputed facts that should go to trial. To set this dispute into context as the court is aware from the briefing in January 2001 American Airlines decided to take over Transworld Airlines in order in part to get rid of TWA's obligations. American chose to run it through a bankruptcy proceeding and in that bankruptcy proceeding American as was his right rejected all of the TWA retirement benefits. However outside the bankruptcy proceeding outside the bankruptcy court American did all it could to tell Congress, the unions, the employees, the retirees, and the public at large that it did intend to give retirement benefits to TWA employees. It did so we allege because there were great concerns as to whether this merger was going to be permitted to go forward even taken through the bankruptcy court. But at a February 1 2001 hearing in the Senate various senators expressed things such as that they were concerned that consumers would suffer if the merger went forward. That Congress did not want the merger to go forward. Another senator said it wasn't good for the domestic aviation market or and I'm paraphrasing here because I forget consumers in general. So when American CEO Don Carty testified at that hearing he was careful to promise that they did intend to offer retiree past privileges. Mr. Carty followed that with a letter to the TWA CEO William Compton the next day on February 2 2001 and said we have made the decision to extend travel privileges to TWA retirees. A month later in March of one on the website American said that American is committed to providing travel privileges to retirees. In April of 2001 Tony Campanaro speaking on behalf of American subsidiary TWA LLC which was created in the transition from TWA as a separate corporation to deal with fitting it within the American Airlines structure. He was a TWA employee was he not? At that time no sir he was not. He had been and had been for years but in April 2001 he was an employee of TWA LLC which was wholly owned subsidiary of American Airlines and he was speaking on behalf of one of the appellants Bobby Levy that words to the effect that we are not taking away your privileges. And indeed American actually honored its promises to almost all retirees. There are TWA retirees who to this day are in fact flying with travel privileges given by American. American confirmed this to them in July of 2001 saying that they were in fact going to give them these privileges. They actually sent that letter to Ms. Levy only reneging in November of 2001. So having promised up front to Congress, to the unions, to the public, to everyone that it was going to give retiree privileges it in fact did give retiree privileges to almost everyone and then basically fly spec'd its promise to look at what programs it could say were not retirees. So they could tell them that they were not eligible for the promise that American had made. It decided that two groups of people at least so-called class nine which is just have to be the level of and class seven are the are standing for retiree privileges such as Ms. Levy and other members of the putative class were not eligible. They did it pronto after bankruptcy court approval of the sale of the assets from TWA to American on I believe it's April 6 but I know it's April 2001 when they sent a letter saying that although and quoting here benefits and privileges will be offered to retirees they weren't going to give it to these folks because they were early outs. They weren't really retirees. It took them seven months to do and Mr. Campanaro statements from Ms. Levy notwithstanding to promise or to renege on its promise to the seven are retirees such as Ms. Levy but again in that letter she received American said that American did agree outside the asset purchase agreement from the bankruptcy court to provide retiree travel benefits but again said you are not a retiree. This flies we think in the face of significant conflict in the facts. TWA issued ID cards when these folks took retirement that certified usually to other airlines but to whoever they want to present it to certified that these people were retirees. Didn't call them early outs. Didn't call them anything else. The paperwork called them retirees. Mr. Gardner. Yes sir. To what extent does this inquiry turn on the definition of retiree? Either not at all or significantly and if I could explain the Americans definition of retiree is different from TWA's definition of retiree. In a way in ways that I don't quite understand but that's what I'm saying. The factual question whether or not they were in fact TWA retirees I think is adequately established but it is certainly there are facts in the record that would establish there are genuine issues of material fact as to that. The card said retiree. But you are you are anticipating my follow-up question then because it seems to me that almost always a definitional question would constitute a question of law and not a fact. So I am interested in trying to understand how determining the appropriate definition here and what that definition is is so fact dependent. Because the part of the question is as American termed it is what did TWA consider retirees. American relied on internal TWA documents such as the management procedures manual wherein there was phrasing that these folks I believe they referred to them as early outs or something like that. What did they get when they became early outs? Did they get pensions? These plans provided there were two plans if I could back up a second. One of them was a collective bargaining agreement or two of them with the unions to which Miss Frazier and Captain Martin belong. There was provisions in the CBA's that said that under retirement as the chapter heading described what they took as early retirement. It called it retirement. It defined it as retirement and they got retirement. And for Miss Levy it was a special offer of early retirement. What did they get? Did they get pensions? If they had hung in there for a number of additional years they would have gotten greater benefits. The prime benefit they got was past privileges. The ability to travel as much as they wanted on TWA and at that time other airlines. When you say they you mean Frazier and Martin? All three of them had similar travel rights. Miss Levy's and other seminars and I can't recollect off the top of my head but they had slightly better. I thought Miss Levy said she was giving up her pension and health benefits. She gave up pension and health. I'm sorry. Yes sir. She did not give up. In fact she retired within a month of when she could have taken official retirement albeit early retirement in order to make sure that she did get her travel benefits. Travel benefits the ability to fly essentially for free 30 bucks or so per ticket is very valuable to these people especially as retirees. Mr. Gardner it's been my understanding you tell me if I'm wrong that your theory of the case and perhaps it's not resisted by American is that this is an issue of Delaware contract law. Yes sir. Is that correct? We're willing to accept it as Delaware contract law. Why should it be a Delaware contract? Seems to me one is largely relying at least as a catalyst of all of this on statements made to the Senate and Washington. Why is it a Delaware contract? The fact that the TWA bankruptcy was there doesn't doesn't require such a result does it? No sir. This is said to be a contract independent of the bankruptcy? It is independent of the bankruptcy and I will tell the court we first filed this the plaintiffs because TWA American Airlines is based in the Dallas area within the northern district of Texas. The district judge there accepted the argument transferred. I understand that it was transferred there but a Delaware court I take it could have construed a contract of another jurisdiction. We did not believe that Delaware law was either more favorable to our position or Americans position and since the court was sitting there did not dispute that apply Delaware law. So on the appeal you also didn't raise a question as to well this is Texas law or something like that and that there was a difference. We decided I'm sorry yeah we decided to dance with who we brung to the dance we since we had agreed to go under. So there's no issue of a choice of laws on this appeal? Not that we have raised the court I'm certain can do it on its own but we have not raised that note. Mr. Gardner. Yes sir. Assuming then that Delaware law applies we're bound by the principles of the common law of contracts of Delaware and as I understand one of those very basic principles and I cite just one case Echols versus Palulo a principle is that we provisions. Wouldn't you agree that the definition of retiree is material and essential as far as this controversy goes? Absolutely your honor and I would also agree that it is defined perfectly well by the papers within TWA. There may be a fact question as to whether these people are retirees but that does not make the offer itself an offer that American met with respect to most TWA retirees does not affect the validity of that offer and that agreement or in Miss Levy's case for acceptance. My time is up. All right I think you saved a couple of minutes so you'll have an opportunity to come back. Suppose we hear from Mr. Bereson on behalf of the appellees. Why don't you enter your appearance? Robert Bereson for American Airlines Inc. and TWA Airlines LLC. Good morning your honors. May it please the court the district court properly granted American Airlines summary judgment motion that it did not make a contract to provide appellants with a lifetime of free travel. As the district court correctly ruled Americans public statements were not offers. They lacked essential terms and they were statements of future intention and the circumstances surrounding. Just one thing you also agree that Delaware law whether abstractly it had to be applied in fact was applied and that there's no issue on appeal we're dealing with Delaware law. That's correct your honor. And the circumstances surrounding Americans public statements after full discovery negate even the possibility that there was a contract or offer to provide travel. In addition to these facts Americans specifically told Appellant Levy that it had decided not to provide her with travel and she admittedly knew that American had made no decision to provide her travel. And for those reasons the district court should be the district court's order should be affirmed. Turning first for a moment to the public statements. You're relying on the communication to Levy as establishing that there was not a contract undertaken by Mr. Carty before the Senate. I think those are two separate issues your honor. We're relying on the fact that Mr. Carty's public statements themselves were not enforceable offers because they lacked essential terms and were statements of future intention. Separately the facts relating to Ms. Levy which were actually months took place months after Mr. Carty's public statements independently give rise to additional reasons why no contract or offer was made with respect to her. The statements themselves expressly left open the nature and extent of Americans obligations to provide travel on their face. Americans stated that it had not decided on what it would provide. The public statements also were silent on the essential terms of what American was obligated to do, who was eligible to receive travel, and what had to be done in exchange for travel. Which were these issues that were left American public statements are in stark contrast to the actual offers in writing by TWA to the appellants made a decade earlier for lifetime travel. They described specifically TWA's obligations, how frequently it had to provide travel, boarding priority, and access to reduce fare travel on other airlines. All of these issues were silent and missing with from Americans public statements. TWA's offers define eligibility in terms of age and years of service at TWA. Americans offers were silent. Alleged offers were silent on that issue. TWA also defined what had to be done in exchange for travel. The appellants had to give up their jobs early before retirement and they had to give up very substantial retirement benefits. They did not receive a pension. They did not receive retiree health care. They did not receive dental. These are very substantial benefits that they had to give up in exchange for travel. In contrast, Americans public statements were totally and utterly silent on the issue of what had to be done by anyone in exchange for the travel. Excuse me, are you saying that people in the Frazier-Martin category had to give up pensions and health benefits? That's correct. With respect to appellants Frazier and Martin and appellant Levy, all of them had to give up these retiree benefits. In exchange for what? In exchange for a lump sum at the time, and this is all undisputed in the record, TWA was a very troubled airline financially going back more than 10 years before its third bankruptcy, which is when American purchased its assets. During that time period, in that interim 10 years, TWA did everything it could to reduce its payroll obligations and what it basically tried to induce employees to leave TWA early before official retirement, and to do that they offered a lump sum and travel. Frazier and Martin's conditions were under a collective bargaining agreement, is that correct? And there was a special for appellant Levy, an early retirement option program that was special in her case, but they both were essentially for the same basic concept. Leave TWA early, lighten the payroll obligations of TWA so that it could continue to operate as a going concern. In exchange, we'll give you a lump sum and this travel benefit. Well, why don't they get the travel benefit then, the plaintiffs? I'm sorry? You're saying that these plaintiffs retired in exchange for, or they left, I don't want to use the word retired, that's a loaded word here, but they left TWA and gave up certain privileges in return for a lump sum of cash and travel privileges, but why don't they get them then? I think that if TWA were here today functioning as an airline, the answer to that question would be unequivocally yes. Unfortunately for TWA, and this is all part of undisputed facts in the record, findings by bankruptcy judge Walsh and affirmed by this court, TWA was going to be liquidated in the absence of the American asset purchase. And by the terms of the American asset purchase, which was approved by the bankruptcy court and affirmed by the district court and this court, American had absolutely no obligation to assume TWA's travel contracts. And in fact, the bankruptcy court orders provide that any party is enjoined from seeking to impose TWA's obligations on American. The context- So they have to show an independent consideration from American. That's right. Yes, Your Honor. And there is no consideration- And what you're saying is giving up the rights that you may have had against TWA, which may have made sense for you to do because their financial condition was such that maybe you weren't going to get them anyhow, in exchange for certain benefits, were the benefits promised by TWA, but not by us? That's correct. That's correct. It was quite clear and clear from orders issued by the bankruptcy court that American had absolutely no legal obligation to accept TWA's obligations under travel. Now, American accepted obligations to provide health care for TWA retirees, but the appellants were not included in that group. Well, for certain retirees, would you characterize the appellants as retirees? We wouldn't characterize the appellants as retirees. And I think it's important to note that the issue of whether appellants are retirees is not a material fact that would preclude summary judgment for two principal reasons. In the first case, American did not make an offer to TWA retirees. So whether appellants are retirees or not, there's no legal offer to TWA retirees. And there's an important, I think, point to clarify that's undisputed in the record. American Airlines voluntarily created a travel program on its own with no legal obligation to do so for TWA retirees, 16,000 TWA retirees. They were not provided a lifetime right to travel. No TWA retiree, no matter how, whatever their status or eligibility, received a lifetime right to travel from American Airlines. The record, it is undisputed in the record that what American provided was a revocable travel privilege. At American Airlines, no one has a right to lifetime travel. Travel is a privilege. And the record is clear after the events of 9-11, travel was revoked temporarily. It was American's right and American reserved that right. And the letter sent to Ms. Levy in July of 2007 stated very clearly that these were privileges. It was not an offer for a lifetime of travel. So what you're saying is when you, when American responded to Senator McCain, they were just giving what they intended to do, but that they hadn't defined precisely on what basis and to who and whose get it. And in fact, they did do that, but not as expansively as the plaintiffs would want. That's correct. And they did it independently. There is absolutely no evidence. And in fact, the evidence, there is evidence, abundant evidence that there was no contract. American did not negotiate with any party. The appellants below stated that the parties that negotiated this alleged contract were TWA's Bill Compton and the CEO of American at the time, Don Carty. Both Mr. Compton of TWA and Mr. Carty testified that there was no offer, there was no contract, there was no negotiations over retiree travel. Was TWA giving lifetime travel benefits to retirees? Because the plaintiffs are suing and they say they're entitled to and their class is entitled to travel benefits. But I just wonder whether anybody is getting what they previously might have gotten from TWA if TWA had been solvent and stayed in business. There is no question, Your Honor, that number one, the appellants in this lawsuit seek and have sought a lifetime of free travel on American Airlines. And two, no TWA retiree, pardon me, Your Honor, no TWA retiree has received lifetime travel. So what you're saying is they're suing for more than the people who actually got something done. Your Honor, they're suing for more than what TWA retirees received. They're suing for more than American Airlines retirees receive. They're suing for more than American Airlines active employees receive. No, no one at American receives a contractual right for travel. It is a privilege. It is revocable. Did anyone who in fact did get the benefits that you offered to travel benefits sue and say, well, look, this is fine except it's not expansive enough because it isn't what we were getting from TWA and that's what we're entitled to? No individual TWA retiree or there is an official committee of TWA retirees that was set up in the bankruptcy. Neither this representative organization for TWA retirees or any individual retiree has ever brought an action against American Airlines for breach of contract or for anything questions. I'll just close by summarizing the basic facts I think are important to keep in mind in terms of the timing of this. TWA filed for bankruptcy. American and TWA had signed an asset purchase agreement, which specifically stated that American was not going to assume TWA's travel contracts for anyone. That asset purchase agreement was approved by the bankruptcy court in March of 2001 and then again in the closing of the asset in April of 2001. Both those orders specifically provided that American did not assume TWA's travel obligations and that any party was enjoined from asserting those obligations against American. At the same time, American made public statements in February and March where it stated, we decided to provide TWA retirees with travel privileges, but we haven't yet decided on what we're going to provide. It then stated in its website in March 2nd of 2001, said in its website, America did, that it had not decided to provide early outs with travel. Again, this goes to this question of why isn't retirees a material issue? Why would have American Airlines done that? Because they were taking on an obligation that had to cost them some money to people who were no longer there and that they had no obligation to do. They're just nice? The testimony in the record on this case from TWA CEO Bill Compton was that it was a nice gesture on the part of American Airlines to be beneficial for morale. That's the exact same testimony from the other party that supposedly negotiated this contract, Don Cardy. It would be good for the morale of the people who were no longer there, actually. Well, American was integrating active employees from TWA into American at the time. So these are fellow colleagues, people of that nature. That was the concept behind it. But it's important that American was not willing to accept, in exchange for nothing, it was essentially this engendering goodwill. There were no consideration here. Was not willing to accept a legal obligation to do something that it didn't do for its own employees and retirees. Mr. Barrison, in point of fact, Mr. Cardy, who's a long time old airline hand, or was, specifically put it in terms of fairness and equity in his deposition, didn't he? I mean, those were his words as to why they were doing it, but it cut both ways. And he said that fairness and equity also applied with respect to the American employees, because he said we'd never offered those kinds of privileges to our own early half population. That's correct, Your Honor. It was a balancing process, and American needed to retain discretion. It is a very sensitive issue in the airline industry. American has always retained discretion over travel, and it did so very carefully by making sure in the bankruptcy court, where legal proceedings were continuing during this entire period, that it had absolutely no contractual obligation for travel to anyone. Okay. Judge Smith, Mr. Barrison's time is up, so unless there are any more questions from the court, you can be seated, sir. I have nothing further. Thank you. Thank you. Okay. Now, Mr. Gardner, you reserved some time, and now's the time to take that, sir. Thank you. The first point I'd like to make was addressing more on the material term question. The same website Mr. Barrison just quoted from in March of 2001 stated also about intending to give retiree travel. While the details of these privileges have not yet been determined, American will grant travel privileges under the most equitable terms possible. They didn't say material terms are missing. American characterized it in early March of 2001 as only needing to iron out the details, such as exactly how they fit this within the American structure. Second, directly related to that, the plaintiffs, the appellants, in both cases, are not suing for the TWA program. They are suing for the program that American promised to give TWA retirees and that American has in fact given most TWA retirees. They're not saying we need the exact same benefits we had. They're saying we want to get what you promised us that you would give. And in fact, in the case of Ms. Levy, we want to get what they did give her. In July of 2001, they sent her a letter confirming that she was among the retirees who would get these benefits. She flew under that program, as well as thousands of other TWA retirees, for about four months until Americans being counters had figured out another group of people that they could pull the rug out from under. But those offer acceptance and performance. Mr. Gardner, you said that all that was left under the Carty statement was working out the details, but that the essential terms were there. That wasn't the view, I take it, of Judge Gleeson in the Tarowski case, if I've got the name right. I understand that the contract theory was a different one in that case. The theory was that it was a contract between American and TWA. But the observation, it seems to me, would be equally applicable here, would it not? It would be applicable. It would also be incorrect. It was, and that was dictum in that case, because what it turned on was the pretty much insupportable claim that there was a contract between American and TWA. There being none, nothing else mattered. I thought one of the propositions of the judge in finding no contract was that it was a rather indefinite and incomplete statement by Mr. Carty as to what obligation was being assumed. As to his statements direct to TWA, yes, but the statements made subsequent by American to the public that they only had to iron out the details would contradict that. Thank you, Ron. All right, thank you very much, gentlemen. The court will take the case under advisement and you'll hear from us in due course. We would ask at this time, Judge Smith, do you think we should just clear this courtroom and then have a conference? That is fine with me, Judge Greenberg, if it's fine with you and Judge Pollack. Absolutely. Yes, then we would ask everyone in the courtroom to withdraw and then we'll just, since we already have the hookup. This court is now in recess until 2 p.m. in Amera's courtroom. Thank you. Evan, would you wait in the back and then you can disconnect us.